UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> vs.<br><br>MYLES JACOB TUTTLE,<br><br>    Defendant. | CR. 17-50049-01-JLV<br><br><br>ORDER |

**INTRODUCTION**

  Defendant Myles Jacob Tuttle, appearing *pro se*, filed a motion for compassionate release.  (Docket 969).  Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Tuttle's motion.  (Dockets 970 and 974).  For the reasons stated below, defendant's motion is denied.

**STANDING ORDER 20-6**

  Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of

---

  [1]See https://www.sdd.uscourts.gov/socraa ("SO 20-06").

the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1).  Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. at ¶ 1.  The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already.  These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. at ¶ 2.

By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4.  Those categories are:

    a. High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b. Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d. Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."  Id.

## FACTUAL BACKGROUND

On December 4, 2019, Myles Tuttle was sentenced to a term of imprisonment of 108 months for accessory after the fact to first degree murder.  (Docket 393).  According to Mr. Tuttle's presentence report ("PSR"), "[b]ased upon a total offense level of 27 and a criminal history category of III, the guideline imprisonment range is 87 months to 108 months."  (Docket 386 ¶ 65).  The statutory maximum term of imprisonment was 15 years.  Id. at ¶ 64.

Mr. Tuttle is currently an inmate at the United States Penitentiary in Atlanta, Georgia ("USP Atlanta").  According to the United States, Mr. Tuttle has a scheduled release date of March 15, 2025.  (Docket 990 at p. 1). According to the Bureau of Prisons' ("BOP") website, Mr. Tuttle's release date is April 11, 2025.[2]

## MR. TUTTLE'S CLASSIFICATION

On May 17, 2022, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion.  (Docket 970).  They jointly "agree that this case should be categorized as a Low Priority case."  Id.

---

[2]See Federal Bureau of Prisions Inamte Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the burden to establish that compassionate release is warranted. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion. United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and

compelling examples.  Id.  Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances.  Id.  There was a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of Prisons.  U.S.S.G. § 1B1.13 cmt. n.1(D).  These categories have not been updated since December 2018 when FSA became law.[3]

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies.  See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act").  The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.  It is clear Congress wishes to

---

[3]Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

"[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Mr. Tuttle asserts he submitted an administrative request to the warden requesting compassionate release.  (Docket 969 at pp. 3-4).  Mr. Tuttle does not indicate when he submitted the request or to which facility's warden it was submitted.  The government asserts they were informed the BOP received no such request.  (Docket 990 at p. 2).  The court will review Mr. Tuttle's motion for compassionate release on its merits regardless.

### B. Defendant's Motion for Compassionate Release

Mr. Tuttle seeks compassionate release to take care of his 8-year-old daughter, as he is "her only legal guardian she currently has available to take responsibility of her." (Docket 969 at p. 1).  He states her other guardian is facing multiple drug felonies and she is financially unable to take care of the child at this time.  Id.  Mr. Tuttle states if he was to be released, he plans to reside at his sister's residence, work for his previous employer and attend intensive outpatient treatment.  Id.  Currently, his sister is taking care of his daughter and her own four children.  Id.  Mr. Tuttle stated his sister is also

6

attending nursing school.  Id.  Mr. Tuttle does not rely upon COVID-19 in his motion for compassionate release.

The commentary to U.S.S.G. § 1B1.13, while not "not dispositive," defines "extraordinary and compelling reasons" due to "family circumstances" as:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13, cmt. 1(C).  Note (1)(C) specifically references care needed for a minor child when there has been the death or incapacitation of the child's caregiver.  Id.

At the time of Mr. Tuttle's presentence investigation report was written, his child was in the care of the child's mother.  (Docket 386 at ¶ 52).  However, now Mr. Tuttle asserts she is unable to care for the child financially and because she is facing criminal charges.  (Docket 969 at p. 1).  Although Mr. Tuttle claims child's mother now faces drug charges, he offers no evidence or information to substantiate his claim.  Thus, Mr. Tuttle has not met his burden to show incapacitation of his child's caregiver.

Furthermore, Mr. Tuttle does not provide support in argument that his sister is no longer able to serve as his daughter's caretaker.  Contrary, he asserts she is caring for her own children and attending school, which supports the fact that his sister is able to provide continued support for his daughter.  (Docket 969 at p. 1).

7

Although not unsympathetic, the court does not find Mr. Tuttle's family circumstances to be an extraordinary or compelling reason that justifies compassionate release.

**C. 3553(a) Factors**

The 3553(a) sentencing factors further show that compassionate release is not warranted. These factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;
2. the need for the sentence imposed—
    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b. to afford adequate deterrence to criminal conduct;
    c. to protect the public from further crimes of the defendant; and
    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

Mr. Tuttle's PSR details his extensive involvement in assisting others in both carrying out and covering up a murder. (Docket 386 at ¶¶ 7-17). Mr. Tuttle drove people, whom he knew to be Denver gang members, from Rapid City to Pine Ridge to look for the murder victim. Id. at ¶¶ 11-12. After the victim's murder, Mr. Tuttle modified a license plate of a vehicle used in the murder to thwart its identification. Id. at ¶¶ 7, 14. Although Mr. Tuttle did not participate in the murder itself, his involvement was serious.

Based on a total offense level of 27 and a criminal history category of III, his guidelines range was 87 to 108 months' custody. Id. at ¶ 65. The court sentenced him to the top end of the guidelines range, to 108 months' custody. (Docket 393).

Mr. Tuttle's criminal history includes a felony simple assault against law enforcement, another assault crime and other misdemeanor offenses. Id. at ¶¶ 35-40. While incarcerated, Mr. Tuttle was sanctioned for possessing a dangerous weapon, fighting with another person and possessing drugs/alcohol. (Docket 974 at pp. 77-78).

After careful consideration, the court concludes Mr. Tuttle's sentence is appropriate for the seriousness of the crime he committed.

## ORDER

Based upon the above analysis it is

ORDERED that defendant's motion for compassionate release (Docket 969) is denied.

Dated March 30, 2023.

        BY THE COURT:

        /s/ *Jeffrey L. Viken*
        JEFFREY L. VIKEN
        UNITED STATES DISTRICT JUDGE